UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RAH-SHAN S. CHERRY,

    Plaintiff,

        v.                                     CAUSE NO. 3:25-CV-93-PPS-JEM

FRANCES, *et al.*,

    Defendants.

OPINION AND ORDER

Rah-Shan S. Cherry, a prisoner without a lawyer, filed a complaint. [ECF 1.] "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Cherry alleges that on March 23, 2024, he got into a disagreement with Sergeant James Watson after the sergeant refused to give Cherry and others a lunch tray and refused to allow Cherry to speak to a higher authority to resolve the matter. Cherry says

that Sergeant Watson was not threatened or in any danger, and yet he sprayed Cherry and other offenders with pepper spray.[1]

While this was going on, Cherry alleges that Officer Francis prematurely called a Signal 10, which unnecessarily escalated the situation. Officer Frances then unleashed his K-9 dog. The dog bit Cherry's arm by his elbow, causing deep muscle tissue punctures and resulting in nerve and muscle damage. Cherry alleges that Officer Francis used his K-9 as a weapon and sicced the dog on him, even though he was already blinded from the O.C. spray to his face and the situation had already deescalated at this point.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The use of a dog can constitute excessive force on the part of the dog's handler. *See Becker v. Elfreich*, 821 F.3d 920, 925-27 (7th Cir. 2016); *Dye v. Wargo*, 253 F.3d 296 (7th Cir. 2001). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quotations and citation omitted). Deference is given to

---

[1] Cherry alleges that Sergeant Watson targeted and harassed him in retaliation for filing a previous lawsuit against him. A state official cannot retaliate against a prisoner based on a prisoner's protected First Amendment activity, such as filing a lawsuit. *See Adams v. Reagle*, 91 F.4th 880, 887 (7th Cir. 2024). However, Cherry does not provide details about the previous lawsuit he says he filed against Sergeant Watson, and court records do not reveal any in this district. He filed a previous lawsuit, *Cherry v. Ind. Dep't of Corr.*, No. 3:22-cv-139-DRL-MGG (N.D. Ind. decided Oct. 30, 2023), but Sergeant Watson is not a defendant there. There is no basis to infer that Sergeant Watson's actions were motivated by that previous lawsuit.

prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Prisons are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). To compel compliance—especially in situations where officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force can be warranted. *Id.* at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That is not to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Id.* Several factors are explored when determining whether an officer's use of force was malicious or legitimate, including the need for applying the force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the prisoner's injury. *Hendrickson*, 589 F.3d at 890 (citation omitted). Cherry has plausibly alleged a claim for excessive force against Sergeant Watson for the use of O.C. spray and against Officer Francis for deploying his K-9.

After the conflict, Cherry alleges that he was handcuffed and brought to segregation, where Captain Luckey refused to get him any medical attention for his dog bites and refused to allow him a detox shower to remove the O.C. spray from his face. He suffered from reduced vision for about a week and sustained damage to the skin around his eyes.

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a

prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (citation omitted). Here, Cherry has plausibly alleged that his medical needs were serious and that Captain Luckey was deliberately indifferent to those needs. This claim may proceed.

Cherry continues that Captain Luckey was also the supervisor of the RHU Seg Unit where Cherry was sent to serve a six-month disciplinary sanction. His sanction ran from March 24, 2024, through September 19, 2024. Captain Luckey is responsible for placing requests for inmates in segregation to be placed on list to be released to population. Cherry alleges Captain Luckey refused to submit a request for him to be released to population "due to fear of retaliation from staff behind the altercation with myself and Sgt. J. Watson." [ECF 1 at 3.] Cherry complains that he has been held in segregation for more than four months after his sanction ended, even though he has no more disciplinary time to serve, is not on administrative segregation, and does not have a protective custody or I&I hold. He says he is being held for no apparent reason other than he's getting transferred to another facility.

4

Cherry alleges Unit Team Manager Ingram also has the authority to place him on the release from segregation list, but he refuses to. Cherry says that UTM Ingram told him, "you aren't going anywhere" and to "get comfortable." [ECF 1 at 4.] UTM Ingram stated that he would never place Cherry on the release list as long as Cherry is at Miami.

These allegations touch on Cherry's due process rights under the Fourteenth Amendment. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. To invoke the protections of the Fourteenth Amendment, Cherry must plausibly allege that he has a liberty interest at stake with his continued placement in segregation. Cherry does not have a liberty interest in avoiding transfer within a correctional facility or in remaining in the prison's general population. *See Wilkinson v. Austin*, 545 U.S. 209, 221–23 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, "an inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). To trigger a liberty interest, an inmate must be subjected to restrictive conditions that present an "atypical and significant hardship" in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484-85. There is no firm rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and instead courts must "look to both the duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019). As to the conditions, it is not enough that they are "more severe than those found in the general

5

prison population." *Hardaway*, 734 F.3d at 744. Rather, they must be in the vein of depriving a prisoner of "all human contact or sensory stimuli." *Id.*

Cherry provides no information in the complaint about the conditions he faces in the RHU Seg Unit. Without that information, I cannot determine whether he has plausibly alleged that his continued placement in the RHU triggers a liberty interest. At the time he filed his complaint, he had spent more than ten months in segregation, which is a rather lengthy period. But given the absence of details about what restrictive conditions he may have faced, I cannot reasonably infer that he was subjected to a significant and atypical hardship in relation to the ordinary incidents of prison life. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[P]utting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened . . . that *might* be redressed by the law" is not enough to state a claim) (emphasis in original).

Even if Cherry had alleged a liberty interest, he has not plausibly alleged that he was denied due process. In the context of continued placement in segregation for non-disciplinary reasons, the due process requirements are not stringent. The Constitution requires only an "informal and nonadversary periodic review (the frequency of which is committed to the discretion of the prison officials) that keeps administrative segregation from becoming a pretext for indefinite confinement." *Isby v. Brown*, 856 F.3d 508, 525 (7th Cir. 2017) (citation omitted). This informal due process requires only "some notice" of the reason for the inmate's placement in long-term segregation and an opportunity to present his views. *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012).

6

Cherry is not constitutionally entitled to release from segregation right when his disciplinary time has ended.

Here, the complaint is confusing about the reasons for Cherry's continued placement in the RHU, and he doesn't say whether he is receiving periodic reviews of his placement. On the one hand, he states that there is no reason to keep him in the RHU. On the other hand, he states that Captain Luckey believes he might not be safe in general population due to retaliation from staff and he is being held in the RHU until he can be transferred to another facility. This vagueness prevents me from reasonably inferring that Cherry's continued placement in the RHU was done in violation of his due process rights.

For these reasons, the court:

(1) GRANTS Rah-Shan S. Cherry leave to proceed against Sergeant James Watson in his individual capacity for compensatory and punitive damages for the alleged use of excessive force on March 23, 2024, when he sprayed Cherry with O.C. spray even though he did not pose a threat in violation of the Eighth Amendment;

(2) GRANTS Rah-Shan S. Cherry leave to proceed against Officer Francis in his individual capacity for compensatory and punitive damages for the alleged use of excessive force on March 23, 2024, when his K-9 bit Cherry even though he was not a threat in violation of the Eighth Amendment;

(3) GRANTS Rah-Shan S. Cherry leave to proceed against Captain Luckey in his individual capacity for compensatory and punitive damages for being deliberately

indifferent to his serious medical needs after he was sprayed with O.C. spray and bit by a dog on March 23, 2024, in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Ingram;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Frances, Sergeant James Watson, and Captain Luckey at the Indiana Department of Correction, with a copy of this order and the complaint [ECF 1];

(7) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Officer Frances, Sergeant James Watson, and Captain Luckey to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on July 9, 2025.

/s/ Philip P. Simon  
JUDGE  
UNITED STATES DISTRICT COURT

8